**Slip Op. 12-153**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : |
| v. | : |
| MILLENIUM LUMBER DISTRIBUTION CO. LTD. and XL SPECIALTY INSURANCE COMPANY, | : |
| | : |
| *Defendants*. | : |
| XL SPECIALTY INSURANCE COMPANY, | : |
| *Cross-Claimant*, | : |
| v. | : |
| MILLENIUM LUMBER DISTRIBUTION CO. LTD., | : |
| | : |
| *Cross-Defendant*. | |

Court No. 06-00129

[Defendant Millenium's Motion for Judgment on the Pleadings is denied]

Dated:  December 18, 2012

Aimee Lee, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, New York, argued for Plaintiff.  With her on the brief were Tony West, Assistant Attorney General, and Barbara S. Williams, Attorney in Charge, International Trade Field Office.  Of counsel on the brief was Christopher Shaw, Office of the Assistant Chief Counsel, Bureau of Customs and Border Protection, U.S. Department of Homeland Security, of New York, New York.

Joel R. Junker, Joel R. Junker & Associates, of Seattle, Washington, argued for Defendant Millenium Lumber Distribution Co. Ltd.  With him on the brief was William N. Baldwin.

# OPINION

RIDGWAY, Judge:

The Government commenced this action against defendant Millenium Lumber Distribution Co. Ltd. and its surety, defendant XL Specialty Insurance Company, to collect more than $1.8 million in liquidated damages. *See* Complaint ¶¶ 1, 21, 31, 42, 44. According to the Government, Millenium breached the terms of its customs bonds by not providing required export permits to the Bureau of Customs and Border Protection.[1] *See id.* ¶¶ 17-20, 28-31, 39-42. The Government claims that, as a consequence of this alleged breach, Millenium and XL are jointly and severally liable for liquidated damages. *See id.* ¶¶ 10-11.

Pending before the Court is Millenium's Motion for Judgment on the Pleadings, in which Millenium seeks to dismiss this action for failure to state a claim upon which relief can be granted. *See* USCIT Rule 12(b)(5); Defendant Millenium Lumber Distribution Co., Ltd.'s Motion for Judgment on the Pleadings ("Def.'s Motion to Dismiss") at 2, 13-14; Supplemental Submission of Defendant Millenium Lumber Distribution Co., Ltd.'s Motion for Judgment on the Pleadings ("Def.'s Supp. Brief") at 1. According to Millenium, the Government "failed to exhaust administrative remedies" because it brought this action to collect liquidated damages "prior to the completion of" mitigation proceedings that Millenium maintains were "pending" at the agency level. Def.'s Motion to Dismiss at 2. Millenium contends that this action is therefore "premature," and

---

[1]The U.S. Customs Service – formerly part of the U.S. Department of the Treasury – was transferred to the U.S. Department of Homeland Security as part of the Homeland Security Act of 2002. *See* Bull v. United States, 479 F.3d 1365, 1368 n.1 (Fed. Cir. 2007). The agency is now commonly known as U.S. Customs and Border Protection, and is referred to as "Customs" herein.

subject to dismissal.  *Id*.; *see also* Defendant Millenium Lumber Distribution Co. Ltd.'s Reply to

Plaintiff's Response to Motion to Dismiss ("Def.'s Reply Brief") at 3 (explaining that Millenium

"claims that this suit is premature and barred by the doctrine of exhaustion of administrative

remedies"); Def.'s Supp. Brief at 1 (stating that "motion requests dismissal . . . for failure to state

a cause of action upon which relief can be [granted] based on the grounds that this action was

commenced before the conclusion of related administrative proceedings and therefore is in violation

of the doctrine of exhaustion of administrative remedies").

     The Government, in turn, argues that administrative mitigation proceedings are not a

condition precedent to the Government's institution of a civil action to collect liquidated damages

– particularly "in a situation such as this, where [tariff] classification is contested and the constraint

of [the] statute of limitations would abrogate the Government's legal right to recover liquidated

damages" if administrative mitigation proceedings were required.  *See* Government's Opposition

to Defendant's, Millenium Lumber Distribution Co. Ltd., Motion for Judgment on the Pleadings

("Pl.'s Response Brief") at 2-3, 11; *see also* The Government's Response to Defendant's, Millenium

Lumber Distribution Co. Ltd., Supplemental Submission ("Pl.'s Supp. Brief") at 2, 4, 16.  The

Government contends that, in any event, Millenium should not be heard to complain, because – the

Government argues – the company at no time took action to institute mitigation proceedings at the

agency level.  *See* Pl.'s Response Brief at 6, 9-11, 13; Pl.'s  Supp. Brief at 14-15.

     Jurisdiction lies under 28 U.S.C. § 1582(2) (2000).[2]  For the reasons outlined below,

_____

     [2]Except as otherwise indicated, all citations to federal statutes herein are to the 2000 edition
of the United States Code.  Similarly, all citations to federal regulations are to the 2000 edition of
the Code of Federal Regulations.

Millenium's Motion for Judgment on the Pleadings must be denied.

## I.  Background

Between late April 2000 and early January 2001, Millenium entered 168 entries of certain softwood lumber products into the United States from Canada.  *See* Complaint ¶¶ 9, 14, 25, 36.  The entries were secured by three bonds issued by Millenium's surety (XL Specialty Insurance Company, or its predecessor, Intercargo Insurance Company).  *See id.* ¶¶ 5, 10-11.  As a condition of each bond, Millenium and its surety agreed that they would comply with all customs laws and regulations.  *Id.* ¶ 11.  They also agreed that they would be jointly and severally liable for liquidated damages in the event of a default.  *Id.*

Millenium entered all of the merchandise at issue under heading 4418 of the Harmonized Tariff Schedule of the United States ("HTSUS") (2000).[3]  See Complaint ¶¶ 15, 26, 37.  Following entry, Customs classified the merchandise under HTSUS heading 4407.  *See id.* ¶¶ 16, 27, 38.[4]  Merchandise falling within heading 4407 is subject to the U.S.-Canada Softwood Lumber Agreement, and requires export permits issued by the government of Canada for entry into the United States.  *See id.* ¶¶ 16, 27, 38; 19 C.F.R. § 12.140; 19 C.F.R. § 113.62(k).

Customs issued Notices of Action informing Millenium that the Softwood Lumber

---

[3] Heading 4418 covers "[b]uilders' joinery and carpentry of wood, including cellular wood panels and assembled parquet panels; shingles and shakes."  Heading 4418, HTSUS.

All citations to the HTSUS herein are to the 2000 edition, which is identical to the 2001 edition in all relevant respects.

[4] Heading 4407 covers "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6mm."  Heading 4407, HTSUS.

Agreement required the company to provide proof of issuance of the requisite export permits and stating that, absent Millenium's submission of the necessary documentation, liquidated damages would be assessed. *See* Complaint ¶¶ 17-18, 28-29, 39-40; *id*., Exhs. 5, 11 (Notices of Action, or "CF-29s").

Millenium failed to provide Customs with proof of the required permits. Customs therefore issued Liquidated Damages Notices to Millenium covering all 168 entries. *See* 19 C.F.R. § 172.1(a)[5]; Complaint ¶¶ 19-20, 30-31, 41-42; *id*., Exhs. 6, 9, 12 (three Notices of Penalty or Liquidated Damages Incurred and Demand for Payment) ("Liquidated Damages Notices," or "CF-5955As"). The Liquidated Damages Notices informed Millenium of the amount of liquidated damages assessed. *See* Complaint, Exhs. 6, 9, 12. In addition, the Liquidated Damages Notices advised Millenium of the company's right to petition Customs for mitigation of the liquidated damages assessments, as well as the procedure for the filing of such petitions. *See id*., Exhs. 6, 9, 12. In particular, the Liquidated Damages Notices specified that Millenium had 60 days to pay the liquidated damages assessments or to file a petition for mitigation with Customs. *See id*., Exhs. 6, 9, 12.

No petition for mitigation proceedings was ever filed; nor did either Millenium or its surety

---

[5]19 C.F.R. § 172.1(a) provides:

Notice of liquidated damages incurred. When there is a failure to meet the conditions of any bond posted with Customs, the principal shall be notified in writing of any liability for liquidated damages incurred by him and a demand shall be made for payment. The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.

19 C.F.R. § 172.1(a).

make any payment on the liquidated damages assessments.  *See* Complaint ¶¶ 22, 33, 44.

In the meantime, Millenium filed protests with Customs contesting the agency's classification of the company's merchandise under HTSUS heading 4407.  *See* Def.'s Motion to Dismiss at 5 n.1.  In two letters (dated August 24, 2001 and October 9, 2001), Customs agreed – at Millenium's request – to defer action on the agency's liquidated damages claims against Millenium (which arose out of Customs' classification determination) while the company pursued its challenge to that determination.  *See id*. at 5-6; *id*. at Exhs. 1, 3 (Customs letters dated August 24, 2001 and October 9, 2001).

Customs denied Millenium's protests, and Millenium brought suit in this court challenging that denial.  *See* Def.'s Motion to Dismiss at 6; <u>Millenium Lumber Distrib. Ltd. v. United States</u>, Court No. 02-00595 (filed Sept. 12, 2002).  In light of Millenium's litigation challenging Customs' classification determination, Customs continued to defer action on the agency's liquidated damages claims.  However, in late May 2005, with the six-year statute of limitations soon to expire, Customs notified Millenium and its surety that – although Customs was aware that the classification issue had not yet been finally resolved, and although the agency would be willing to allow the classification litigation to run its course – Customs would need to take appropriate action to preserve the agency's liquidated damages claims, unless Millenium and/or its surety made full payment or the two executed waivers of the statute of limitations within 30 days.  *See* Complaint ¶¶ 21, 32, 43; *id*., Exh. 7 (letters to Millenium and surety, dated May 23, 2005).[6]

---

[6]A complaint to recover liquidated damages must be filed "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later."  28 U.S.C. § 2415(a).

Both Millenium and its surety declined to execute waivers of the statute of limitations. Similarly, neither made payment of the liquidated damages assessed. *See* Complaint ¶¶ 22, 33, 44; Pl.'s Response Brief at 10.  Roughly one year later, the Government commenced this action against Millenium and the surety, to collect the liquidated damages assessed.

In the meantime, Customs' classification determination has been sustained by this court, which, in turn, was affirmed on appeal. *See* Millenium Lumber Distrib. Ltd. v. United States, 31 CIT 575 (2007), *aff'd*, 558 F.3d 1326 (Fed. Cir. 2009) (holding that Millenium's merchandise is properly classified under HTSUS heading 4407).  Thus, there is no longer any dispute that Millenium's merchandise is properly classified under heading 4407, and, as such, is subject to the Softwood Lumber Agreement.

## II.  Standard of Review

In reviewing a motion to dismiss for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff." Amoco Oil Co. v. United States, 234 F.3d 1374, 1376 (Fed. Cir. 2000); *see generally* USCIT Rule 12(b)(5). "Dismissal for failure to state a claim is proper only when it is beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief." Amoco Oil, 234 F.3d at 1376.  Dismissal under Rule 12(b)(5) is thus proper only if the plaintiff's allegations of fact are not "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted).  At the same time, a complaint's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citation omitted).  "[O]nly a complaint that states a plausible claim for relief

survives a motion to dismiss."  *Id.*, 556 U.S. at 679.

### III.  <u>Analysis</u>

Distilled to its essence, Millenium's argument is that the Government failed to exhaust

administrative remedies because the Government filed the instant action to collect liquidated

damages "prior to the completion of" mitigation proceedings that Millenium maintains were

"pending" at the agency level.  Def.'s Motion to Dismiss at 2.  Millenium contends that this action

is therefore "premature," and must be dismissed.  *Id.*

However, the exact same argument has been previously considered – and rejected – by this

court in <u>Canex</u>, a case strikingly similar to the case at bar.  *See* <u>United States v. Canex Int'l Lumber</u>

<u>Sales Ltd.</u>, 32 CIT 407 (2008).  Millenium's argument also cannot be reconciled with other relevant

decisions of this court and the Court of Appeals, which highlight the permissive, voluntary, and

discretionary nature of the administrative mitigation proceedings in question.  *See* <u>United States v.</u>

<u>Cocoa Berkau</u>, 990 F.2d 610, 614-16 (Fed. Cir. 1993); <u>United States v. Ataka America, Inc.</u>, 17 CIT

598, 605, 826 F. Supp. 495, 501-03 (1993).  Moreover, the two cases on which Millenium

principally relies are simply inapposite.  *See* <u>Warner-Lambert Co. v. United States</u>, 24 CIT 205

(2000); <u>United States v. Bavarian Motors, Inc.</u>, 4 CIT 83, 85-86 (1982).  Millenium's motion to

dismiss thus has no sound basis in the law.  *See* section III.A, *infra*.

Millenium's case is just as weak on the facts.  As summarized below, contrary to

Millenium's repeated assertions, no mitigation proceedings were ever commenced at the agency

level.  Simply stated, Millenium never availed itself of the "remedy" that it now claims should have

been exhausted.  *See* section III.B, *infra*.

Finally, as explained below, the scheme that Millenium advocates is entirely unworkable, and would have the potential to produce dire results in cases such as this.  The practical realities of administrative process and litigation thus bear out the correctness of the Government's legal position here.  *See* section III.C, *infra*.

## A.  The Legal Merits of Millenium's Argument

The gravamen of Millenium's motion to dismiss is that the Government's commencement of this action "is in violation of the doctrine of exhaustion of administrative remedies."  Def.'s Supp. Brief at 1; *see also* Def.'s Motion to Dismiss at 2.  Emphasizing that the Court of International Trade is directed, "where appropriate," to "require the exhaustion of administrative remedies," Millenium argues that the Government's attempt to collect liquidated damages is "premature and untimely," because – Millenium maintains – the company should have been allowed to engage in mitigation proceedings at the agency level.  *See* Def.'s Motion to Dismiss at 2, 7, 13; 28 U.S.C. § 2637(d) (providing for application of doctrine of exhaustion of administrative remedies in "appropriate" cases); 19 U.S.C. § 1623(c); 19 C.F.R. § 172.1(b).[7]  According to Millenium, the Government's

---

[7]The regulations provide that a principal or its surety may file an application (a petition) for mitigation seeking relief from the assessment of liquidated damages pursuant to 19 U.S.C. § 1623(c). *See* 19 C.F.R. § 172.1(b).

Under 19 U.S.C. § 1623(c):

The Secretary of the Treasury may authorize the cancellation of any bond provided for in this section, or of any charge that may have been made against such bond, in the event of a breach of any condition of the bond, upon the payment of such lesser amount or penalty or upon such other terms and conditions as he may deem sufficient.

asserted failure to exhaust administrative remedies warrants dismissing this action for failure to state a claim upon which relief can be granted.  *See* Def.'s Motion to Dismiss at 1-2; Def.'s Supp. Brief at 1.

As the Government notes, however, this precise argument was squarely rejected in <u>Canex</u> (a case with facts virtually identical to those here), which, in turn, relied heavily on <u>Cocoa Berkau</u> and <u>Ataka</u>.  *See* Pl.'s Supp. Brief at 3-6, 8-9, 13; <u>Canex</u>, 32 CIT at 408-09 (discussing, *inter alia*, <u>Cocoa Berkau</u>, 990 F.2d at 614-16; <u>Ataka</u>, 17 CIT at 605, 826 F. Supp. at 501-03); *see also* Pl.'s Response Brief at 6-11, 13-14 (discussing <u>Cocoa Berkau</u> and <u>Ataka</u>); Pl.'s Supp. Brief at 5, 8-16 (same).

Like <u>Cocoa Berkau</u> and <u>Ataka</u> before it, <u>Canex</u> underscored that administrative proceedings on a petition for mitigation are not only informal, but also permissive and voluntary, and that relief is granted at the discretion of Customs.  *See* <u>Cocoa Berkau</u>, 990 F.2d at 615-16 (emphasizing that mitigation proceedings before Customs are "completely voluntary" and that agency's decision whether to grant relief is "discretionary"; characterizing mitigation proceedings as "discretionary and summary [in] nature," and highlighting "marked contrast" with other "formal and time-consuming administrative proceedings"); <u>Ataka</u>, 17 CIT at 605-06, 826 F. Supp. at 502-03 (noting that mitigation proceedings are "voluntary," and that decision whether to grant relief is at agency's "discretion"; describing mitigation proceedings as "discretionary and informal" and "not mandatory"); <u>Canex</u>, 32 CIT at 408-09 (explaining that mitigation proceedings are "voluntary and

_____

19 U.S.C. § 1623(c).  *See also* 19 C.F.R. § 172.11(b) (stating that a petition for relief may be in any form); 19 C.F.R. § 172.12(b)(1) (stating that petition for relief "shall be filed within 60 days from the date of mailing of the notice of the liability for liquidated damages").

informal, and relief is granted at the discretion of Customs"; characterizing such proceedings as "permissive").

Emphasizing the "discretionary and summary" nature of mitigation proceedings, the Court of Appeals held in Cocoa Berkau that the Government is not required to resolve a pending petition for mitigation before filing an action to recover liquidated damages in this court. *See* Cocoa Berkau, 990 F.2d at 614-16 (rejecting Government argument that surety's commencement of voluntary mitigation proceedings precluded Government from filing civil action to collect liquidated damages, and thus tolled statute of limitations).  To the same effect, the court in Ataka ruled that, because administrative mitigation proceedings are "discretionary and informal," they "need not be resolved in order for the government to recover liquidated damages under a bond through court action." Ataka, 17 CIT at 605, 826 F. Supp. at 502 (involving Government action attempting to recover customs duties from importer's successor and surety).

Hewing to Cocoa Berkau and Ataka, the Canex court expressly held that "the Government was not required to postpone its filing of [an action for liquidated damages] until [the importer at issue] exercised its right to request mitigation proceedings." Canex, 32 CIT at 409.  Millenium has made no showing that a different outcome should obtain here.[8]

---

[8]The judges of the Court of International Trade are in no way bound by the decisions that their colleagues on the court have rendered in prior cases. *See generally* Algoma Steel Corp., Ltd. v. United States, 865 F.2d 240, 243 (Fed. Cir. 1989).  However, "[w]henever [a judge] considers the holding and reasoning of a previous opinion rendered by a different Judge of the CIT [in a similar case], [he or she] regards such opinions as persuasive." Nucor Corp. v. United States, 32 CIT 1380, 1447 n.47, 594 F. Supp. 2d 1320, 1380 n.47 (2008); *see also*, *e.g.*, D & L Supply Co. v. United States, 22 CIT 539, 540 (1998) (same); Buna v. Pacific Far East Line, Inc., 441 F. Supp. 1360, 1365 (N.D. Cal. 1977) (explaining that "[j]udges of the same district court customarily follow a previous decision of a brother judge upon the same question except in unusual or exceptional circumstances").

Millenium seeks to make much of the fact that the issue presented in Cocoa Berkau was whether the Government's action to recover liquidated damages was time-barred.  Millenium asserts that this action is thus distinguishable from Cocoa Berkau because the pending motion involves the applicability of the doctrine of exhaustion, while Cocoa Berkau involved the applicability of a particular statute of limitations.  *See* Def.'s Reply Brief at 1-5, 7; Def.'s Supp. Brief at 3-6, 8-9.  But Millenium has failed to explain why that distinction should compel a different result.  *See generally* Pl.'s Supp. Brief at 4-5, 8-14, 17-19.  Indeed, the holding in Cocoa Berkau was premised broadly on the Court of Appeals' determination that mitigation proceedings are so voluntary and so discretionary that they play no role in determining *when* the Government may sue for liquidated damages.  *See* Cocoa Berkau, 990 F.2d at 615-16 (explaining nature of mitigation proceedings and why such proceedings do not bar initiation of civil action by Government to collect liquidated damages).  As Canex recognized, the linchpin in Cocoa Berkau (and Ataka) was the permissive, voluntary, and discretionary nature of the administrative mitigation proceedings at issue in those cases – the same administrative proceedings at issue in Canex and here.  Canex, 32 CIT at 408-09; *see also* Cocoa Berkau, 990 F.2d at 614-16; Ataka, 17 CIT at 605-06, 826 F. Supp. at 501-03.  Contrary to Millenium's assertions, Cocoa Berkau cannot be cabined to its facts.

Millenium stakes its motion to dismiss on two cases that it labels "directly on point."  Def.'s Reply Brief at 10; *see also* Def.'s Motion to Dismiss at 7-11 (discussing the two cases); Def.'s Reply Brief at 10-13 (same); Def.'s Supp. Brief at 5-8 (same).  The first is Warner-Lambert, in which the court dismissed an action for failure to exhaust administrative remedies.  *See generally* Warner-Lambert, 24 CIT at 208-11.  According to Millenium, Warner-Lambert stands for the proposition

that dismissal of an action such as the instant case "is proper where administrative proceedings involving liquidated damages have not been completed at the time the court action was commenced." Pl.'s Motion to Dismiss at 7. As <u>Canex</u> explained, however, <u>Warner-Lambert</u> lent no support to the plaintiff in that case; and it is equally unavailing for Millenium here. *See* <u>Canex</u>, 32 CIT at 409.

The plaintiff in <u>Warner-Lambert</u> brought an application for a temporary restraining order and preliminary injunction premised on an alleged – and, as of that time, not-yet-realized – threat of possible sanctions, which, it was claimed, would have a "detrimental impact" on the plaintiff's operations. <u>Warner-Lambert</u>, 24 CIT at 205-06. The purported threat of sanctions arose out of various liquidated damages assessments made by Customs. *Id*., 24 CIT at 205-06. The Government established that some of the liquidated damages claims at issue were the subject of petitions for mitigation filed by the plaintiff that were still pending before Customs. *Id*., 24 CIT at 206-08. Further, although the administrative process was complete as to some of the liquidated damages claims, none had been referred to the Department of Justice for initiation of a collection action. *Id*., 24 CIT at 207. Moreover, there were no actual sanction proceedings initiated against the plaintiff. *Id*.

The <u>Warner-Lambert</u> court granted the Government's motion to dismiss. In so doing, the court discussed the constitutional requirement of ripeness. <u>Warner-Lambert</u>, 24 CIT at 209. In that context, the court noted that, "where appropriate," the exhaustion of administrative remedies is required. *Id*. (discussing 28 U.S.C. § 2637(d)). The <u>Warner-Lambert</u> court concluded that, in the case before it, the harm that the plaintiff alleged was merely speculative, because, at the time, there

was at most a threat of sanctions, and because the administrative process was not yet complete. *Id.*,

24 CIT at 209. The court explained that, under such circumstances, it could not "discern the kind

of threat of immediate, irreparable injury necessary to grant or sustain the extraordinary equitable

relief" that a temporary restraining order or preliminary injunction represents. *Id.*, 24 CIT at 208.

Dismissing the plaintiff's action, the Warner-Lambert court found that it would be "appropriate" for

plaintiff to "exhaust fully its administrative remedies" as to those cases that remained pending in the

administrative pipeline. *Id.*, 24 CIT at 209.

Warner-Lambert bears no resemblance to the case at bar. This is an action brought by the

Government to collect unpaid liquidated damages – not an action for a temporary restraining order

and preliminary injunction, brought against the Government. The action here is based on a breach

of a condition of customs bonds (specifically, Millenium's failure to present proof of the permits

required by the Softwood Lumber Agreement); and there is nothing unripe or speculative as to that

claim. *See* Canex, 32 CIT at 409 (in case strikingly similar to case at bar, rejecting same argument

raised by Millenium here, and ruling that "the . . . case is ripe for action"). In contrast, the Warner-

Lambert court's decision requiring the plaintiff in that case to complete pending administrative

proceedings reflected the court's determination that – unless and until the plaintiff had a better

understanding of the practical effects (if any) of its alleged non-compliance with the terms of the

bond – the plaintiff's claim was not ripe for judicial review, because there was no way for the court

to determine whether the plaintiff faced the type of immediate, irreparable injury required for

issuance of a preliminary injunction. *See generally* Pl.'s Response Brief at 11-12; Pl.'s Supp. Brief

at 5, 19-21.[9]  As ammunition for Millenium's argument, <u>Warner-Lambert</u> misses the mark.

The second case on which Millenium relies is <u>Bavarian Motors</u>.  *See generally* Def.'s Motion to Dismiss at 9-11 (discussing <u>Bavarian Motors</u>, 4 CIT at 85-86); Def.'s Reply Brief at 10-13 (same); Def.'s Supp. Brief at 5-8 (same).  But, like <u>Warner-Lambert</u>, <u>Bavarian Motors</u> too fails to advance Millenium's cause, for reasons that are summarized in <u>Canex</u>.  *See* <u>Canex</u>, 32 CIT at 409.

In <u>Bavarian Motors</u>, the court held that the Government's action to collect liquidated damages from a surety was premature in light of the surety's pending protest of the liquidated damages claims at the administrative level.  *See* <u>Bavarian Motors</u>, 4 CIT at 85.  In the instant case, however, neither Millenium nor the surety protested the demand for the liquidated damages.[10] Further, as <u>Canex</u> observes, <u>Ataka</u> emphasized that <u>Bavarian Motors</u> was decided prior to the 1984 effective date of 19 U.S.C. § 1505(c), which gave the Government an immediate right to sue for liquidated damages, notwithstanding the pendency of protest proceedings.  *See* <u>Canex</u>, 32 CIT at 409 (citing <u>Ataka</u>, 17 CIT at 607, 826 F. Supp. at 503 ("[S]ince the effective date of 19 U.S.C. § 1505(c) [now 19 U.S.C. § 1505(b)], completion of protest proceedings has not been a requirement for suit

---

[9]Moreover, in contrast to <u>Warner-Lambert</u>, in this case not only are there no administrative mitigation proceedings pending, but, in fact, no such proceedings were ever initiated.  *See* section III.B, *infra*.

[10]The Government states that – to the extent that the court's holding in <u>Bavarian Motors</u> was premised on the court's determination that the defendant surety in that case had a right to file a protest concerning the Government's demand for payment against the bond (*see* <u>Bavarian Motors</u>, 4 CIT at 85) – subsequent decisions from both the Court of Appeals and this court have established that the assessment of liquidated damages does not constitute a "charge or exaction" and, thus, that it cannot be the subject of a protest.  *See* Pl.'s Response Brief at 13 n.7 (citing 19 U.S.C. § 1514(a)(3); <u>United States v. Utex Int'l, Inc.</u>, 857 F.2d 1408, 1413-14 (Fed. Cir. 1988); <u>United States v. Toshoku America, Inc.</u>, 879 F.2d 815, 818 (Fed. Cir. 1989); <u>Pope Prods. v. United States</u>, 15 CIT 279, 281-83 (1991) (analyzing <u>Utex</u> and <u>Toshoku</u>, and rejecting argument that a "Notice of Demand for Liquidated Damages is a protestable decision"))).

to collect.")).  Millenium's reliance on <u>Bavarian Motors</u> is thus misplaced.[11]

In sum, there is no substance to Millenium's position that the Government may file a civil action to collect liquidated damages only after mitigation proceedings at the agency level are complete.  The settled law is to the contrary.

## B.  The Factual Basis for Millenium's Argument

As detailed above, there is no legal merit to Millenium's claim that the pendency of administrative mitigation proceedings bars the Government from bringing the instant collection action for liquidated damages.  But, in any event, contrary to Millenium's assertions, there are no

---

[11]As explained above, the doctrine of exhaustion of administrative remedies does not apply in circumstances such as these; thus, there was no requirement that administrative mitigation proceedings be complete before the Government could bring this civil action to collect liquidated damages.  However, even if the doctrine of exhaustion did apply, the Government notes that one or more of the established exceptions might well operate to excuse a failure to exhaust.  *See generally* Pl.'s Response Brief at 15-16.

For example, it appears that requiring exhaustion (*i.e.*, requiring the Government to now allow Millenium to file and pursue a petition for mitigation) would have been a "useless formality," because any defenses to liability that Millenium may have could be asserted in this proceeding. Similarly, the potential relief that would have been available to Millenium in a mitigation proceeding was a reduction in the amount of liquidated damages demanded.  *See* 19 C.F.R. § 172.21. However, to the extent that Millenium has continued to believe that it has grounds for mitigation and should not be required to pay the full amount of liquidated damages that was assessed, the company has been free to make its case to the Government at any point during the pendency of this action and to make an appropriate offer of settlement, to attempt to resolve the matter amicably.  Finally, Millenium has failed to make clear what – if any – additional facts it claims need to be developed at the administrative level.  <u>R.R. Yardmasters of Am. v. Harris</u>, 721 F.2d 1332, 1338-39 (D.C. Cir. 1983).  The fundamental facts of this case – like those in <u>Canex</u>, a nearly identical case – are fully-developed, and relatively straightforward: Millenium imported goods that were subject to the Softwood Lumber Agreement, but failed to provide proof of the permits required under that agreement.  Given these circumstances, there would be no apparent point to requiring the Government to allow Millenium to file a petition and pursue administrative mitigation proceedings before the agency.

such mitigation proceedings pending here.  *Compare*, *e.g.*, Def.'s Motion to Dismiss at 8 (asserting

that "administrative liquidated damages cases against Millenium remain under active agency

consideration," and that "[t]he administrative cases had not concluded at the time Plaintiff

commenced this action, and, for that matter, have not yet concluded") *with* Pl.'s Response Brief at

2, 4-6, 9-11 (summarizing chronology of events before the agency, and explaining that neither

Millenium nor its surety ever filed application/petition to institute mitigation proceedings at the

administrative level); Pl.'s Supp. Brief at 1-2, 14-15 (same).[12]

_____

[12]In its briefs, Millenium repeatedly waffles back and forth as to whether administrative
mitigation proceedings were initiated.

        Generally, Millenium argues that administrative mitigation proceedings were initiated in a
timely fashion and remained pending at least as of the date the Government commenced this action.
In addition to the citations provided above, *see*, *e.g.*, Def.'s Motion to Dismiss at 8 (asserting that
"administrative proceedings in this case [have] not been completed"); *id.* (stating that
"administrative proceedings remain 'under active agency consideration'"); *id*. at 9 (asserting that
Government here "filed suit prior to the conclusion of administrative liquidated damages
proceedings" and "prior to the conclusion of the administrative proceedings against Millenium");
*id*. at 13 (criticizing Government for "[t]he commencement of this case prior to the . . . conclusion
of any substantive proceedings in the underlying administrative liquidated damages cases"); Def.'s
Reply Brief at 1 (asserting that administrative mitigation proceedings "are in a 'holding status'");
*id*. at 11 (referring to "uncompleted administrative proceedings"; *id*. (asserting that "the pending
liquidated damages administrative proceedings bar [the instant action]"); *id*. at 13 (contending that
allegedly pending "administrative cases have been placed in a 'holding status'"); Def.'s Supp. Brief
at 6 (arguing that "there is an administrative proceeding that was commenced and is still pending").

        Elsewhere, however, Millenium candidly concedes that mitigation proceedings were never
commenced, but seems to suggest that it had some right to do so that was abrogated by the
Government's commencement of this action.  *See*, *e.g.*, Def.'s Motion to Dismiss at 8
(acknowledging that "Millenium has not . . . exercised its express right to file petitions for relief in
the administrative cases"); *id*. at 10 (alleging that Millenium "has not been afforded the opportunity
to exercise its right to submit a petition to contest the liquidated damages proceeding"); *id*. at 11
(asserting that "Millenium withheld the filing of a petition for relief from the liquidated damages
cases," and complaining that Customs "did not afford Millenium opportunity to exercise its right
to file a petition for administrative relief before . . . filing this action to collect liquidated damages").

Millenium tries to cast the two letters that the company received from Customs in August and October 2001 as evidence that administrative mitigation proceedings were pending.  To the contrary, the two letters reflected nothing more than Customs' agreement to defer action on the agency's liquidated damages claims against Millenium (*i.e.*, to place them in "a holding status"), awaiting "resolution of [Millenium's] filed protest" contesting Customs' tariff classification of Millenium's merchandise.  *See* Def.'s Motion to Dismiss at Exhs. 1, 3.  Nothing in either letter even hints at the existence of any pending mitigation proceedings initiated by Millenium or its surety.  And it is telling that Millenium itself cannot point to any application or petition for mitigation that it filed with Customs.  Nor can Millenium point to any such application or petition filed by its surety.

In short, contrary to Millenium's assertions at various points in its briefs, there are no relevant administrative mitigation proceedings pending at Customs – and there never were.  As detailed above, however, even if Millenium had commenced administrative mitigation proceedings, the pendency of such  proceedings would not have barred the Government from bringing the instant

---

In any event, it is clear beyond cavil that administrative mitigation proceedings could have been initiated only by Millenium or its surety (*not* by Customs), and that mitigation proceedings could have been instituted only by the filing of an appropriate application or petition.  *See* 19 C.F.R. § 172.1(b) (providing that principal or surety may file application/petition for mitigation seeking relief from assessment of liquidated damages); 19 C.F.R. § 172.11 (stating that application/petition for mitigation should specify facts relied upon by petitioner as grounds for mitigation).  And it is undisputed that neither Millenium nor its surety ever filed any such request for relief, even though such an application/petition for mitigation could have been submitted at any time after Millenium's receipt of the Liquidated Damages Notices in 2001.  *See* Pl.'s Response Brief at 9; Pl.'s Supp. Brief at 14 n.8.

action.[13]

## C.  The Practical Implications of Millenium's Argument

As explained above, there is no legal merit to Millenium's claim that the doctrine of exhaustion barred the Government from bringing this action to collect liquidated damages.  The soundness of that outcome as a matter of law is further reinforced by very practical considerations.

Even if the two letters that Millenium and its surety received from Customs in 2001 were to be read to allow Millenium to delay the filing of a petition for mitigation, Customs' letters of May 23, 2005 made it clear to any reader that Customs could no longer afford to wait.  *See* Complaint, Exh. 7 (letters to Millenium and surety, dated May 23, 2005).   After allowing Millenium's classification litigation to progress, but cognizant of the statute of limitations on the Government's liquidated damages claims, Customs' May 23, 2005 letters explained that the agency would be willing to continue to defer action on the liquidated damages claims and await the outcome of the classification litigation – provided that Millenium and its surety executed waivers of the statute of limitations, to preserve the Government's right to pursue its liquidated damages claims if Millenium did not prevail in the classification litigation.  *See id.*  The May 23, 2005 letters put both Millenium and its surety on notice that, without executed waivers, the statute of limitations would leave the Government with little  choice but to bring a collection action in this court.  *See generally* Canex, 32 CIT at 409-10 (concluding that letter from Customs comparable to May 23, 2005 letters here put

---

[13]As the Government notes, "[e]ven if Millenium had availed itself of the opportunity to submit a petition for mitigation . . . , the Government would have had no obligation to actually resolve that petition prior to filing suit."  Pl.'s Supp. Brief at 16 n.10 (citing Cocoa Berkau, 990 F.2d at 615-16; Ataka, 17 CIT at 605, 826 F. Supp. at 501-02; Canex, 32 CIT at 409).

the plaintiff company in that case on notice of potential legal action by agency, and afforded the company "ample opportunity to execute the statute of limitations waiver or petition for mitigation proceedings as necessary"; ruling that "[the plaintiff company's] argument that it was deprived of the opportunity [to pursue mitigation] . . . is therefore without merit").[14]

Notwithstanding the May 23, 2005 letters, both Millenium and its surety refused to execute waivers. Without such waivers, the Government effectively had no option but to file this action.

Millenium does not dispute that the Government's liquidated damages claims were subject to a six-year statute of limitations. *See* 28 U.S.C. § 2415. Nor does Millenium seriously dispute that Millenium was in control of whether – and, if so, when – to institute administrative mitigation proceedings. Yet Millenium here insists that the Government is precluded from filing an action to collect liquidated damages whenever mitigation proceedings are pending.

As the Government points out, if it had waited to file suit – as Millenium argues it was required to do – the Government would have faced the very real possibility that, as in Cocoa Berkau, the statute of limitations would have barred the liquidated damages claims that are the subject of this action. *See* Pl.'s Response Brief at 2-3, 11; Pl.'s Supp. Brief at 14-16. The scheme that Millenium envisions thus would be patently unworkable.

---

[14]As the Government notes, even "after the issuance of the [May 23, 2005] letter[s], neither Millenium nor its surety took any action to file a petition" seeking mitigation – not even in the nearly one-year window between the May 2005 letter and the commencement of this civil action in mid-April 2006. *See* Pl.'s Response Brief at 10. The Government emphasizes that "[i]f Millenium desired to avail itself of the voluntary, administrative mitigation proceeding, it had the opportunity to do so. It did not." *Id*. Millenium never explains why it did not file a petition seeking mitigation after receiving the May 23, 2005 letter. In fact, Millenium conspicuously avoids addressing the significance of the May 23, 2005 letter in any meaningful sense.

### IV. **<u>Conclusion</u>**

For the reasons set forth above, Millenium's Motion for Judgment on the Pleadings must be

denied.  A separate order will enter accordingly.


_____ /s/Delissa A. Ridgway _____

Delissa A. Ridgway

Judge

Dated:  December 18, 2012
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

UNITED STATES OF AMERICA,                    :

                                  *Plaintiff,*                    :

                             v.                    :

MILLENIUM LUMBER DISTRIBUTION CO.    :
LTD. and XL SPECIALTY INSURANCE
COMPANY,                                      :

                            *Defendants.*                    :
_____                    Court No. 06-00129

XL SPECIALTY INSURANCE COMPANY,              :

                         *Cross-Claimant,*                    :

                             v.                    :

MILLENIUM LUMBER DISTRIBUTION CO.    :
  LTD.,
                                       :

                         *Cross-Defendant.*
_____

## **ORDER**

      Upon consideration of Defendant Millenium Lumber Distribution Co. Ltd.'s Motion for

Judgment on the Pleadings, and in accordance with the Court's opinion of this date, it is hereby

ORDERED that Defendant's Motion is denied.


                                 /s/ Delissa A. Ridgway
                                  Delissa A. Ridgway, Judge


Dated:  December 18, 2012
       New York, New York